ON MOTION FOR REHEARING AND REHEARING EN BANC
ROWE, J.
We deny the motion for rehearing and rehearing en banc filed by appellees Caduceus Properties, LLC, and Tallahassee Neurological Clinic, P.A. No further motions from the parties will be entertained. On our own motion, however, we withdraw our previous opinion and substitute the following opinion in its place.
The appellants, William A. Graney (“Graney”) and KTD Consulting Engineers (“KTD”), appeal a final order of judgment entered in favor of Caduceus Properties (“Caduceus”) and Tallahassee Neurological Clinic (“TNC”) for claims arising out of the design, construction, and installation of a heating, ventilation, and air conditioning (“HVAC”) system on property owned by Caduceus and leased by TNC. Graney and KTD raise eight issues on appeal. Because one of the issues is dispositive, we decline to reach the remaining issues. Graney and KTD assert that *223 the claims brought by Caduceus and TNC against them were barred by the statute of limitations. We agree, and for the reasons that follow, we reverse the judgment of the trial court.
Facts and Procedural History
This appeal arises from a civil action brought by TNC and Caduceus against Graney, KTD, and Michael Lee Gordon (“Gordon”).[1] Caduceus is a Florida limited liability company and the owner of the property which is the subject of the lawsuit. The property includes a single-story building occupied by TNC, a pain clinic and surgery center.
In 2003, TNC and Gordon (a professional architect) entered into a contract for design of improvements to the building for the pain clinic and surgery center. Gordon subcontracted with KTD (an engineering design consulting firm) and Graney (a professional engineer and principal of KTD) to design the HVAC system for the TNC clinic. TNC separately contracted with Kelly Brothers Sheet Metal to perform the installation of the HVAC system.
The certificate of occupancy for the building was issued in August 2005, and almost immediately, the HVAC system began to fail. TNC contacted Gordon, KTD, and Kelly Brothers with complaints concerning the system. Over the next ten months, the parties sought to ascertain the reasons for the failure of the HVAC system and made several efforts to remedy the problems. After those efforts proved unsuccessful, TNC entered into a contract with another contractor to design, procure, and install a replacement HVAC system.
On July 24, 2006, Caduceus filed suit against Gordon, seeking to recover damages for the malfunctioning HVAC system. On March 7, '2007, Gordon filed a third-party complaint against Graney and KTD.
On June 3, 2010, Caduceus and TNC initiated a direct action against third-party defendants Graney and KTD.[2] In their answer and affirmative defenses to the direct action, Graney and KTD raised the statute of limitations as an affirmative defense. At trial, Graney and KTD moved for involuntary dismissal based upon the statute of limitations defense. The trial court denied the motion, and ultimately entered judgment in favor of Caduceus and TNC. This appeal followed.
Analysis
Because the statute of limitations issue raised by Graney and KTD is a question of law dependent on the construction of the applicable statutes, our standard of review is de novo. See Bryson v. State, 42 So.3d 852, 853-54 (Fla. 1st DCA 2010).
The claims asserted against Gra-ney and KTD are “founded on the design, planning or construction of an improvement to real property” and are, therefore, governed by section 95.11(3)(c), Florida Statutes, which provides a four-year limitations period. Pursuant to section 95.11(3)(c), for actions involving completed construction projects, the limitations period begins to run “from the date of actual possession by the owner, the date of issuance of the certificate of occupancy ... or the date of completion or termination of the contract between the professional engineer, registered architect, or licensed contractor ... whichever is latest.” Id. If, however, the action involves a latent defect, the time runs from the time the de- *224 feet is discovered or should have been discovered with the exercise of due diligence.” Id.[3]
In this case, the certifícate of occupancy was issued on August 5, 2005. The record reflects that Caduceus and TNC were aware of problems associated with the HVAC system by September 2005; therefore, the four-year statute of limitations for the claims against Graney and KTD ran no later than September 2009. Caduceus and TNC initiated their direct action against KTD and Graney on June 3, 2010, almost nine months after the statute of limitations had expired. The issue is then whether the direct action complaint relates back to the filing date of the original complaint brought by Caduceus and TNC against Gordon.
Florida Rule of Civil Procedure 1.190(c) provides that an amendment relates back to the date of the original pleading “[w]hen the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.” There is no dispute here that the claims asserted against KTD and Gra-ney in the direct action complaint “arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading.” The question presented in this case is whether an amendment relates back to the original complaint where a third-party defendant is made a primary defendant after the statute of limitations has run.
“Generally, the addition of a new party will not relate back to the original complaint.” Schwartz v. Wilt Chamberlain’s of Boca Raton, 725 So.2d 451, 453 (Fla. 4th DCA 1999). Where the purpose of the amendment is to bring a new party into the suit, the relation-back doctrine does not apply, and dismissal on time-barred grounds is proper. Anderson v. Emro Mktg. Co., 550 So.2d 531, 532 (Fla. 1st DCA 1989). In Cabot v. Clearwater Construction, 89 So.2d 662 (Fla.1956), the Florida Supreme Court explained the relation-back doctrine as follows:
The general rule appears to be that whether an amendment of process or pleading changing the description of a party from a corporation to an individual or vice versa after the statute of limitations has run introduces a new party or new cause of action depends upon whether the misdescription is interpreted merely as a misnomer or defect in the characterization of the party or whether it is deemed an entire change of parties. If the former, the amendment *225 relates back to the commencement of the action. If the latter, the amendment amounts to the institution of an entirely new action.
Id. at 668-64 (citations omitted).
Thus, an amendment will relate back where the defendant “knew or should have known that the plaintiff ... was guilty of a misnomer as concerns the correct identity of the defendant.” Kozich v. Shahady, 702 So.2d 1289, 1291 (Fla. 4th DCA 1997) (citations omitted); accord Rayner v. Aircraft Spruce-Advantage, Inc., 38 So.3d 817 (Fla. 5th DCA 2010); Schwartz v. Metro Limo, Inc., 683 So.2d 201 (Fla. 3d DCA 1996); Anderson v. Emro Mktg. Co., 550 So.2d 531, 532 (Fla. 1st DCA 1989) (“If ... this complaint merely corrected a misnomer, then application of the relation-back theory would have precluded dismissal on the ground that the suit was barred by the statute of limitations.”); Gray v. Executive Drywall, Inc., 520 So.2d 619, 620 (Fla. 2d DCA 1988) (barring amendment by plaintiff to add new defendant Executive Drywall where plaintiff originally sued Executive Plastering because Executive Plastering was not “a misnomer of the real owner of [Executive] Drywall’s business”); Francese v. Tamarac Hosp. Corp., 504 So.2d 546 (Fla. 4th DCA 1987) (amendment permitted where plaintiff first named as defendant “University Community Hospital” at a specific address, and later named “Ta-marac Hospital Corporation d/b/a University Community Hospital” at the same address).
Similarly, an amendment to add a new party will relate back “where the originally named defendant is related to the proper defendant and, through its participation in the proceedings or otherwise, has led the plaintiff to believe the correct defendant was sued.” Schwartz, 683 So.2d at 203 (quoting Hohl v. Croom Motorcross, Inc., 358 So.2d 241 (Fla. 2d DCA 1978); accord Rayner, 38 So.3d at 820).[4]
Here, Caduceus and TNC can advance no argument that their failure to timely add Graney and KTD as defendants in the original action was the result of a misnomer or mistake as to the identities of the potential defendants. Caduceus and TNC were well aware of the identities of Graney and KTD and their roles in the design and approval of the HVAC system from the time the system began to fail in August or September 2005. Further, it is undisputed that Caduceus and TNC were aware of the potential liability of KTD and Graney when Gordon filed the third-party complaint, just over eight months after the *226 original lawsuit was filed and at least two years before the statute of limitations ran.
Nor is this a case where the defendant misled the plaintiff into believing that the correct defendant was sued. Despite the absence of misnomer or mistake, however, Caduceus and TNC urge the court to hold that their direct action complaint against KTD and Graney related back to the original complaint filed against Gordon and invite the court to adopt the Fifth District’s reasoning set forth in Gatins v. Sebastian Inlet Tax Dist., 453 So.2d 871 (Fla. 5th DCA 1984). For the reasons that follow, we decline the invitation to follow Gatins.
In Gatins, the plaintiff timely brought a wrongful death action against Sebastian Inlet Tax District. The plaintiff brought the action on behalf of his daughter, who was killed when she fell through an opening in the guardrail on a pier owned and operated by the Tax District. One day before the statute of limitations ran on the wrongful death claim, the Tax District filed a third-party complaint against Beindorf and Associates, an engineering and construction firm that constructed the pier. Thereafter, following the expiration of the statute of limitations, the plaintiff, with leave of court, amended his complaint to assert a direct cause of action against the third-party defendant Beindorf.
In considering whether the amendment to add the third-party defendant related back to the filing of the complaint against the original defendant, the Fifth District addressed the issue as one of first impression and considered authority from other jurisdictions. The court began its analysis acknowledging that the majority of courts considering the issue had determined that such amendments did not relate back. Id. at 873 (“Of the jurisdictions that have considered the issue, most have held that such claim is barred despite the fact that the party sought to be added was impleaded as a third party defendant within the limitation period.”) (citations omitted). However, the Fifth District went on to adopt the minority view, reasoning that such amendments “merely adjust the status of an existing party.” Id. The court concluded that permitting such amendments was not inconsistent with the purpose underlying the statute of limitations, i.e., protecting against unusually long delays in filing of lawsuits and preventing unexpected enforcement of stale claims:
If a third party complaint is filed within the applicable limitation period and the third party defendant is made aware that it may be held liable for the plaintiffs damages, these purposes are satisfied and the fact that the plaintiff is permitted to amend outside the limitation period to formally make the third party defendant a party defendant is not inconsistent with these purposes, at least where, as here, the plaintiffs claim concerns the same issues as are raised in the third party complaint.
Id. at 875 (citations and footnote omitted).
Although cited by two of the other Districts, no Florida court has expressly adopted the reasoning in Gatins or applied the court’s holding to similar facts. Kaye v. Steiner, 460 So.2d 568, 568 (Fla. 3d DCA 1984) (Pearson, J. concurring) (“The introductory signal to the cases cited in this per curiam affirmance should not be construed as our approval of Gatins ....”); BMAB E. Tower, Inc. v. Testwell Craig Lab. & Consultants, Inc., 835 So.2d 1211 (Fla. 3d DCA 2003) (no discussion of facts); McKee v. Fort Lauderdale Produce Co., Inc., 503 So.2d 412 (Fla. 4th DCA 1987) (Stone, J. dissenting) (“Although I concur in the result reached in Gatins, in my view it is not applicable here.”).
This court’s analysis of decisions in other jurisdictions reveals that a split of authority persists as to whether a direct *227 action against a third-party defendant relates back to the filing of the original complaint against the original defendant. A number of courts favor the interpretation of the relation-back doctrine approved by the Fifth District in Gatins, concluding that “relation back” in the context of third-party practice does nothing more than adjust the status of existing parties. See, e.g., Lawlor v. Cloverleaf Mem’l Park, 56 N.J. 326, 266 A.2d 569 (1970); Duffy v. Horton Mem’l Hosp., 66 N.Y.2d 473, 497 N.Y.S.2d 890, 488 N.E.2d 820, 823 (1985); Rakes v. Fairmont Mobile Homes, Inc., 178 W.Va. 152, 358 S.E.2d 236, 239 (1987). The logic underlying this line of authority is grounded in the notion that the filing of a third-party complaint automatically informs the third-party defendant that the plaintiff may ultimately seek to bring a direct action against the defendant, and therefore, the defendant is not prejudiced by the plaintiffs delay in filing the direct action.
However, other jurisdictions have concluded that an equally plausible inference is that the third-party defendant had no reason to know, before the filing of the motion for leave to amend the complaint, that the plaintiff would assert a direct claim against them. See Lundy v. Adamar of New Jersey, Inc., 34 F.3d 1173, 1183 (3d Cir.1994) (“Where there is a basis for the plaintiff to assert liability against the party or parties named in a complaint and there is no reason for another party to believe that the plaintiff did anything other than make a deliberate choice between potential defendants, courts have consistently held that the third requirement of Rule 15(c)(3) [Federal Rule of Civil Procedure governing relation back of amendments] is not met.”); State ex rel. Hilker v. Sweeney, 877 S.W.2d 624, 628 (Mo.1994) (barring direct action against third-party defendant on grounds that “ ‘relation back’ is triggered only by a mistake in identifying a party defendant and not by a mistake in failing to add a party defendant.”); Laliberte v. Providence Redev. Agency, 109 R.I. 565, 288 A.2d 502 (1972) (holding that plaintiffs could not assert direct action against third-party defendants after the statute of limitations had run); J.G. Boyd’s Good Housekeeping Shops, Inc. v. Gen. Sec. Serv., Inc., 483 S.W.2d 826 (Tex.Civ. App.1972) (holding that plaintiffs claim against third-party defendant was barred by the statute of limitations). Under such circumstances,' the plaintiffs failure to assert direct claims against the third-party defendant may be regarded as a matter of tactical choice, rather than mistake or error. See Lavin v. Silver, No. Civ.A. 01C06033 WLW, 2003 WL 21481006, at *3 (Del.Super.Ct. June 10, 2003) (unpublished decision) (holding that plaintiffs direct action against third-party defendant was barred by statute of limitations because plaintiffs decision not to timely sue the third-party defendant was “a matter of choice, not mistake”); Mathai v. Catholic Health Initiatives, Inc., No. Civ.A. 00-656, 2000 WL 1716747, at *3 (E.D.Pa. Nov.16, 2000) (unpublished decision) (holding that federal rule allowing relation back “was not intended to assist a plaintiff who ignores or fails to respond in a reasonable fashion to notice of a potential party”); Higginbotham v. Fearer Leasing, Inc., 32 Mich.App. 664, 189 N.W.2d 125, 131 (1971) (holding that plaintiffs, by their failure to file a direct action against third-party defendant within limitations period, “elected to forego their right to name him as a principal defendant”).
We find that the latter line of authority represents the more reasonable interpretation of the relation-back doctrine and is also consistent with the underlying purpose of the statute of limitations. As recognized by all five Florida District Courts of Appeal and the Florida Supreme *228 Court, the law distinguishes between the substitution of parties (as a result of mistake or misnomer) and the addition of parties. Cabot v. Clearwater Construction, 89 So.2d 662 (Fla.1956); Rayner v. Aircraft Spruce-Advantage, Inc., 88 So.3d 817 (Fla. 5th DCA 2010); Kozich v. Shahady, 702 So.2d 1289 (Fla. 4th DCA 1997); Anderson v. Emro Mktg. Co., 550 So.2d 531 (Fla. 1st DCA 1989); Schwartz v. Metro Limo, Inc., 683 So.2d 201 (Fla. 3d DCA 1996); Gray v. Executive Drywall, Inc., 520 So.2d 619 (Fla. 2d DCA 1988). Relation back should only be permitted where there is a mistake or misnomer in identifying a party defendant, not a mistake in failing to add a party defendant. The fact that a defendant who is proposed to be added has participated in the lawsuit as a third-party defendant does not relieve the plaintiff of the burden of demonstrating mistake or misnomer. To hold otherwise would amount to interpreting rule 1.190(c) to mean that the filing of a third-party complaint tolls the running of the statute of limitations on a cause of action between the plaintiff and a third-party defendant. Nothing in the text of the rule compels such an expansive interpretation.
Further, permitting a plaintiff to amend the originál complaint to add a new defendant in circumstances where the plaintiff is fully aware of the identity of the defendant and the defendant’s potential liability thwarts the primary purpose of-the statute of limitations, i.e., “to protect defendants from unfair surprise and stale claims.” Major League Baseball v. Morsani, 790 So.2d 1071, 1075-76 (Fla.2001); Nardone v. Reynolds, 333 So.2d 25, 36 (Fla.1976) (purpose of statute of limitations is to prevent defendants from being called upon to defend old claims with' nothing more than “tattered or faded memories, misplaced or discarded records, and missing or deceased witnesses”). Here, while Graney and KTD were indisputably on notice of the complaint against Gordon brought by Caduceus and TNC, and were aware of the need to prepare a defense in the third-party action brought by Gordon, they lacked notice that the plaintiffs intended to file a direct action against them, an action which included different claims, requiring different elements of proof. This is precisely the type of harm that statutes of limitation are designed to prevent.
Caduceus and TNC made an intentional or tactical decision not to timely bring claims against parties they knew to be potentially liable. Caduceus and TNC were aware of the identities of KTD and Graney since the time that the HVAC system first began to fail in August 2005. TNC and Caduceus deliberately chose to sue another defendant with full knowledge of the existence and identity of other potential defendants. Under such circumstances, there has been no mistake or misnomer and the plaintiffs should not be given a second opportunity to add a new claim against entirely new defendants after the limitations period has expired.
For these reasons, we conclude that the direct action filed by Caduceus and TNC against Graney and KTD did not relate back to the filing of the original complaint; thus, the action was barred by the statute of limitations. We, therefore, reverse the judgment of the trial court.
Based on our holding, we certify express and direct conflict with the Fifth District in Gatins v. Sebastian Inlet Tax Dist., 453 So.2d 871 (Fla. 5th DCA 1984).
REVERSED; CONFLICT CERTIFIED
THOMAS, J., concurring; VAN NORTWICK, J., dissenting.

. Gordon filed bankruptcy during the trial of this case. Because the litigation against Gordon was automatically stayed, no judgment was entered against him and he was never party to this appeal.

. The trial court granted Caduceus' motion for leave to amend the complaint to add TNC as a party plaintiff.

. Although not raised in their answer brief, during oral argument of this appeal Caduceus and TNC argued an alternative basis for affirming the trial court’s ruling pursuant to the "tipsy coachman” doctrine. Caduceus and TNC assert that the statute of limitations was tolled because Graney and KTD concealed a latent defect. Upon careful review of the record, we conclude that the argument advanced by Caduceus and TNC fails as a matter of law and fact. First, it is well established that the plaintiff's lack of knowledge of the specific cause of a construction defect does not toll the statute of limitations. See Almand Construction Co., Inc. v. Evans, 547 So.2d 626, 628 (Fla. 1989). The record in this case is undisputed that TNC and Caduceus were aware of the failure of the HVAC system and deficiencies in its design by September 2005. Second, in support of their damages claim, Caduceus and TNC identified several defects in the HVAC system. Only one of those defects was asserted to be "latent,” namely the installation of the wrong type of cooling coils in the HVAC system. However, in September 2005, Caduceus and TNC were made aware of the alleged latent defect in an e-mail reporting that a type of cooling coil other than the type specified by Graney and KTD had been installed. For this reason, the argument that the statute of limitations was tolled on the basis of the late discovery of a latent defect is also refuted by the record.

. In applying the exceptions based on misnomer or mistake, Florida courts have required that the newly-added and .original defendants have an identity or unity of interest. See, e.g. Ron’s Quality Towing, Inc. v. Se. Bank of Florida, 765 So.2d 134 (Fla. 1st DCA 2000). This requirement flows from the notion that the newly-added defendant is "united in interest” with the original defendant, and by virtue of that relationship can be charged with such notice of the institution of the action that the newly-added defendant will not be prejudiced in maintaining a defense on the merits. Id. at 136. Courts determine unity of interest by considering whether the newly-added and original defendants have common officers, principals, agents, or addresses. See, e.g., Schwartz v. Wilt Chamberlain’s of Boca Raton, 725 So.2d 451 (Fla. 4th DCA 1999) (finding unity of interest where original defendants and new defendants had common officers, the same registered agent, and were represented by the same attorneys); Kozich v. Shahady, 702 So.2d 1289 (Fla. 4th DCA 1997) (finding unity of interest where defendants operated out of a single office, had overlapping officers and directors, shared consolidated financial statements and registration statements, shared the same attorney and received service of process through the same agent at the samé location).